IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAURICIO CUADRA,

    Plaintiff,

v.

CITY OF SOUTH SAN FRANCISCO, et al.,

    Defendants.

NO. C08-3439 TEH

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

This matter came before the Court on October 26, 2009 on cross-motions for summary judgment. Plaintiff Mauricio Cuadra ("Plaintiff" or "Cuadra") moves for partial summary judgment as to his second and fourth causes of action, for unreasonable search and seizure and violation of his First Amendment rights. Defendants City of South San Francisco ("City") and City police officers Michael Brosnan, Danny Gil, John Kallas, Matt McNichol, Blake Molyneux, Adam Plank, and Roy Varney ("Individual Defendants") move for summary judgment on all claims. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part, and Plaintiff's motion is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

This action revolves around two arrests. The first occurred on July 8, 2006. Cuadra alleges in his First Amended Complaint ("FAC") that he had left a friend's house and was smoking a cigarette outside his car in South San Francisco when Defendant Molyneux

approached him and questioned what he was doing there.[1] Cuadra asked why he was being stopped, in response to which Molyneux told him to "shut up" and struck him in the left eye, knocking him to the ground. Cuadra alleges he was handcuffed and left face-down on the ground, where an officer pressed his knee into Cuadra's back while pulling his handcuffed hands into the air, causing his head to hit the pavement. He was later placed "in something akin to a straight-jacket," which was tightened painfully, and taken to the county jail in a squad car. FAC ¶¶ 18-19.

Defendants deny Cuadra's account. They allege that officers from the South San Francisco Police Department ("Police Department") placed Cuadra in the back of a police car without incident after responding to complaints that Cuadra was drunk and yelling in a roadway at 3:00 am. Once officers brought him to the Police Department for booking, he was placed in another police car where he repeatedly bashed his head against the plastic divider, prompting officers to put him in a "WRAP" to restrict his movements for his own safety. Defendants contend that the officers never struck or assaulted Cuadra, nor treated him unprofessionally.

The parties' accounts largely converge here. Three days after his original arrest, on July 11, 2006, Cuadra returned to the police station to lodge a citizen's complaint alleging that Defendants Gil, McNichol, Molyneux, Plank, and Varney used excessive force in arresting him. After conducting an Internal Affairs investigation, Captain Jeff Azzopardi[2] – who supervised the sergeant on duty the night of Cuadra's arrest – concluded that Cuadra had fabricated his allegations. Azzopardi contemplated referring the case to the San Mateo County District Attorney's Office ("D.A.'s Office") for prosecution under California Penal Code section 148.6(a), under which filing a knowingly false allegation of misconduct against

---

[1] The parties did not submit evidence to support their accounts of Cuadra's arrest on July 8, 2006, which they agreed was not relevant to these motions. The Court therefore draws these facts from Plaintiff's First Amended Complaint and Defendants' Motion for Summary Judgment, and makes no judgment as to the veracity of either account.

[2] Azzopardi is not a defendant in this action. However, Cuadra requests permission to add Azzopardi as a defendant. The Court addresses this request *infra.*

2

a police officer is a misdemeanor. Aware that the statute's constitutionality had been questioned, Azzopardi consulted with deputy district attorney Sheryl Wolcott, who advised him to prepare a report about the incident and investigation. Defendant Kallas prepared a misdemeanor report dated October 4, 2006, which was approved by Defendant Brosnan the following day. That report referred the case to the D.A.'s Office for prosecution under section 148.6. The D.A.'s Office filed a misdemeanor complaint against Cuadra in San Mateo County Superior Court on December 6, 2006, for five counts of violating section 148.6 – one count for each officer named in Cuadra's citizen's complaint. An arrest warrant was signed by Superior Court Judge John L. Grandsaert on December 8, and Cuadra was arrested by the Police Department on March 24, 2007. The parties do not dispute that the Ninth Circuit had held section 148.6 unconstitutional in *Chaker v. Crogan*, 428 F.3d 1215 (9th Cir. 2005), more than a year before the arrest warrant was issued.[3] The criminal case against Cuadra was ultimately dismissed.

Cuadra filed suit against the City and seven of the City's police officers on July 16, 2008. In his FAC, he brought five claims for relief under 42 U.S.C. § 1983, based on July 8, 2006 incident and his subsequent arrest for filing a false complaint. His claims based on the first arrest have been dismissed as time-barred, leaving claims for unreasonable search and seizure under the Fourth Amendment (second cause of action), malicious prosecution (third cause of action), and violation of the First Amendment (fourth cause of action) arising out of his false complaint arrest, as well as a *Monell* claim against the City (fifth cause of action).

Defendants move for summary judgment on all claims, based on the officers' qualified immunity and, on the *Monell* claim, Cuadra's inability to show that the alleged

---

[3] In *Chaker v. Crogan*, the Ninth Circuit held that section 148.6 "impermissibly discriminates on the basis of a speaker's viewpoint in violation of the First Amendment." 428 F.3d 1215, 1217 (9th Cir. 2005). Although a knowingly false complaint is "not within the area of constitutionally protected speech," it must still meet the First Amendment's "core requirement of viewpoint neutrality." *Id.* at 1225-26. Section 148.6 breached this requirement by barring "[o]nly knowingly false speech *critical* of peace officer conduct," but not "[k]nowingly false speech *supportive* of peace officer conduct." *Id.* at 1228. This ruling by the Ninth Circuit followed a series of conflicting decisions on the constitutionality of section 148.6, including a unanimous decision by the California Supreme Court upholding its constitutionality three years earlier. *People v. Stanistreet*, 29 Cal. 4th 497, 512 (2002).

3

unconstitutional conduct resulted from an official policy, pattern, or practice. Defendants further argue that the individually named Defendants must be dismissed as the FAC never alleges their participation in the investigation of Cuadra's complaint or in his second arrest, which are the basis for his remaining claims. Cuadra argues that the Ninth Circuit's holding that section 148.6 is unconstitutional entitles him to partial summary judgment as to the Individual Defendants' liability on his second and fourth causes of action, for unreasonable search and seizure and violation of the First Amendment.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250.

4

## DISCUSSION

The claims at issue on the parties' motions for summary judgment are all based on Plaintiff's arrest pursuant to section 148.6(a). Cuadra argues that, since the Ninth Circuit had already held the statute unconstitutional before his arrest, he is entitled to a ruling on summary judgment that his arrest lacked probable cause and violated his First Amendment rights. Defendants, in cross-moving for summary judgment and opposing Plaintiff's motion, argue that the officers are entitled to qualified immunity. Defendants also contend that the seven named Individual Defendants must be dismissed from this lawsuit "because they had no parts in supervising or conducting the false-claims investigation." Defs.' Mot. at 6-7. Cuadra asserts that the seven Individual Defendants are proper targets of this lawsuit, because they "were in and part of the causal chain leading to Plaintiff's arrest and prosecution." Pl.'s Opp'n to Defs.' Mot. at 8. Finally, Defendants argue that the *Monell* claim against the City must fail because Cuadra has failed to present any evidence that a municipal policy or custom was the driving force behind the constitutional deprivation.

### I. Claims Against the Seven Individual Defendants

Defendants contend that Plaintiff named the wrong officers. They claim the FAC describes the Individual Defendants only as "actors in either the July 8, 2006 arrest or the July 11, 2006 station visit," but never alleges "that any one of these officers either participated in the investigation into his false claims or arrested him in December of 2006."[4] Defs.' Mot. at 17-18. Since the Court already dismissed Plaintiff's claims based on the July 8 arrest, the Individual Defendants sued for their alleged participation in that arrest must likewise be dismissed, they argue. Plaintiff responds that "the FAC does allege that the individual defendants prepared a false report about Plaintiff," which made them "part of the causal chain leading to Plaintiff's arrest and prosecution." Pl.'s Opp'n to Defs.' Mot. at 8.

---

[4] According to the arrest warrant, Cuadra was arrested on March 24, 2007, not in December of 2006.

5

This, according to Plaintiff, means the Individual Defendants are properly named and should not be dismissed.

Cuadra's characterization of the FAC is correct: it does allege that the seven Individual Defendants "prepared a false report regarding Plaintiff, and in doing so caused a complaint and arrest warrant to be issued against Plaintiff for violation of" section 148.6. FAC ¶ 23. On summary judgment, however, the Court's gaze is not confined to the pleadings. Since Plaintiff carries the burden at trial, Defendants – as the movants on this issue – need only point to the absence of evidence supporting Plaintiff's claim to shift to Plaintiff the burden of showing a triable issue. Failure to meet that burden will defeat the claim.

Whether the Individual Defendants can be held liable for Cuadra's arrest hinges on causation. Section 1983 imposes liability on a person who "subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights" guaranteed by federal law. 42 U.S.C. § 1983. "[A] public official is liable under § 1983 only 'if he *causes* the plaintiff to be subjected to deprivation of his constitutional rights.'" *Baker v. McCollan*, 443 U.S. 137, 142 (1979) (internal citation omitted) (emphasis in original). The deprivation alleged by Cuadra was his arrest and prosecution for violating section 148.6. The Individual Defendants' potential liability therefore depends on whether they subjected him – or caused him to be subjected to – that deprivation.

The causation requirement of section 1983 "is not satisfied by a showing of mere causation in fact," but rather requires that the plaintiff "establish proximate or legal causation." *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The Ninth Circuit has characterized the causal connection required to sustain section 1983 liability as follows:

> A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an

6

act which he is legally required to do that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). Proximate cause hinges on foreseeability: whether a defendant knew or should have known that the deprivation would likely result from his actions. *Id.*; *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 785 (9th Cir. 2000) ("It is well-established that foreseeability analysis is an appropriate part of proximate cause determinations in § 1983 actions.").

**A.     Defendants Gil, McNichol, Molyneux, Plank, and Varney**

According to Cuadra's theory, the causal chain leading to his arrest was triggered by the misdemeanor report. Plaintiff presents no evidence that any Individual Defendant other than Kallas and Brosnan[5] prepared the report. Cuadra predicates liability on the appearance of five of the seven Individual Defendants in the prosecutor's complaint. However, that fact alone establishes no conduct on which liability could be predicated; indeed, it establishes no conduct of any kind. The officers cannot have *caused* a constitutional deprivation without having *acted* in some way.

Even assuming the five Individual Defendants other than Kallas and Brosnan participated in the investigation of Cuadra's complaint, such conduct is too attenuated from Cuadra's arrest to satisfy section 1983's proximate cause requirement. The citizen's report form that Cuadra submitted provides that "[e]ach report received will be investigated and appropriate action taken." Frucht Decl. to Pl.'s Mot., Ex. B. By making his complaint,

---

[5] The Misdemeanor Report lists Kallas as having "prepared" the report, and Brosnan as having "approved" it. Frucht Decl. to Pl.'s Mot., Ex. A.

7

Cuadra invited the Police Department to investigate his claim. The Individual Defendants could not have reasonably foreseen that their participation in that investigation – at Plaintiff's own request – would result in Cuadra's arrest for the violation of an unconstitutional statute.

The burden is on Plaintiff to "demonstrate that the defendant[s]' conduct was the actionable cause of the claimed injury," including "both causation-in-fact and proximate causation." *Tahoe-Sierra*, 216 F.3d at 783. Cuadra has failed to meet that burden with respect to the five Individual Defendants other than Kallas and Brosnan. Since proximate causation is a requirement for all section 1983 actions, this deficiency applies to all of Plaintiff's remaining claims against the Individual Defendants: for unreasonable search and seizure, malicious prosecution, and breach of his First Amendment rights.

In light of this failure, Plaintiff requests "an opportunity to conduct further discovery pursuant to Rule 56(f) to further determine what their role was in initiating and filing the complaint against Plaintiff." Pl.'s Opp'n to Defs.' Mot. at 9. Rule 56(f) permits the Court to allow for discovery by ordering a continuance when the party opposing a summary judgment motion "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). "To merit a continuance for additional discovery under Rule 56(f), the party opposing summary judgment must file an affidavit specifying the facts that would be developed through further discovery." *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 996 (9th Cir. 2001). Plaintiff has failed to provide such an affidavit. "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986).

Even if the Court overlooks the absence of an affidavit, Plaintiff's request – made in his opposition to Defendants' summary judgment motion – does not specify any reasons to justify his inability to offer such evidence at this time, as required by the rule. "Vague assertions about the need for discovery are not sufficient for purposes of Rule 56(f)." *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, No. 07-17177, 2009 U.S. App.

LEXIS 16325, at *4 (9th Cir. July 23, 2009). The Court therefore denies, without prejudice, Plaintiff's request for additional discovery on this issue.

Plaintiff has failed to draw a causal connection between five of the Individual Defendants and Plaintiff's alleged constitutional deprivation. For that reason, Gil, McNichol, Molyneux, Plank, and Varney are not proper defendants, and the Court GRANTS their motion for summary judgment as to all claims against them.

**B.  Defendants Kallas and Brosnan**

   **1.  Chain of Causation**

The chain of causation for Kallas and Brosnan, who prepared and approved the misdemeanor report, is less attenuated than that of the other five Individual Defendants. Cuadra's arrest should have been reasonably foreseeable to Kallas and Brosnan, whose report recommended that Cuadra be prosecuted under section 148.6. The inquiry does not end there, however, as the chain of causation may have been broken by an intervening actor.

Although government officials "are generally responsible for the 'natural' or 'reasonably foreseeable' consequences of their actions . . . liability may not attach if an intervening decision of an informed, neutral decision-maker 'breaks' the chain of causation, meaning that the harm to the plaintiff can be traced more directly to an intervening actor." *Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009) (internal quotations omitted); *see also Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("Traditional tort law defines intervening causes that break the chain of proximate causation. This analysis applies in section 1983 actions."). "A prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff." *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008). "Put in traditional tort terms, the prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution." *Id.* At issue here is whether the action of the D.A.'s Office – in filing a misdemeanor complaint and seeking a warrant for

9

Cuadra's arrest – breaks the chain of causation linking Kallas and Brosnan to the alleged constitutional violation.

In *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981), the Ninth Circuit "adopted an evidentiary presumption 'that the prosecutor filing [a criminal] complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed],' thereby breaking the 'chain of causation between an arrest and prosecution' and immunizing 'investigating officers . . . from damages suffered' after the complaint was filed." *Beck*, 527 F.3d at 862 (quoting *Smiddy*, 665 F.2d at 266-67). That presumption could only be rebutted by a showing that the prosecutor's independent judgment had been compromised, for example, by pressure from police or reliance on false information. *Smiddy*, 665 F.2d at 266-67. Where the plaintiff introduces evidence to rebut the presumption, "the burden remains on the defendant to prove that an independent intervening cause cuts off his tort liability." *Id.* at 267.

The viability of the *Smiddy* framework was cast into doubt by the Supreme Court's decision in *Hartman v. Moore*, which grappled with "the distinct problem of causation" in retaliatory prosecution cases. 547 U.S. 250, 263 (2006). The *Hartman* plaintiff brought a First Amendment claim against Postal Service investigators he alleged had induced his prosecution in retaliation for his criticism of the post office. The causal connection required in such a case "is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person" – in that case, the postal investigators – "and the action of another," the prosecutor. *Id.* at 262. The Court therefore sought out a connection "to bridge the gap between the non-prosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity." *Id.* at 263. That connection, the Court held, "is the absence of probable cause." *Id.* The Court concluded that, in a First Amendment retaliation claim, "a retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decisions," and "enough for a

prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge." *Id.* at 265.

In *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008), the Ninth Circuit reassessed the *Smiddy* framework in light of the Supreme Court's decision in *Hartman*. The court observed "considerable tension" between the two cases, in that *Smiddy* "requires an inquiry into the prosecutor's actual mental processes to resolve" the causal problem, whereas *Harman* "decisively rejected" that approach by settling on "[p]roof of the absence of probable cause" as "the sole factor necessary to resolve the chain of causation problem." 527 F.3d at 864. The *Beck* court refused to overrule *Smiddy*'s "rebuttable presumption approach in the Fourth Amendment-context," as *Hartman* never addressed its holding's applicability to Fourth Amendment claims, and a three-judge panel has only limited ability to overrule circuit precedent. *Id.* at 864-65. Nor did it need to, since Beck was able to satisfy both standards. Explicitly leaving the question of *Smiddy*'s fate "for a case in which the answer matters," the court held that

> in any constitutional tort case, including Fourth Amendment-based cases, in which a prosecutor has instigated a prosecution, it is necessary, if not sufficient, that a plaintiff seeking to sue non-prosecutorial officials alleged to be responsible post-complaint for the arrest or prosecution show the absence of probable cause.

*Id.* at 865. That holding applies squarely to Cuadra's complaint against Kallas and Brosnan, a "constitutional tort case" against "non-prosecutorial officials" where the prosecution was "instigated" by a prosecutor. *Id.*

Under *Beck*, "it is necessary, if not sufficient," for Cuadra to show the absence of probable cause to bridge the causal gap interposed by the D.A.'s Office. "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Safford Unified Sch. Dist. # 1 v. Redding*, --- U.S. ----, 129 S. Ct. 2633, 2639 (2009) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). There was no probable cause because Cuadra's conduct was not an offense: section 148.6 had been held unconstitutional

11

more than a year before the arrest. The facts were therefore insufficient to support a reasonable belief that an offense has occurred. Cuadra has shown the absence of probable cause.

What *Beck* does not resolve is whether the absence of probable cause would, by itself, be enough to hold Kallas and Brosnan liable despite the prosecutor's intervention. The facts and analysis of *Beck* are instructive on this question. Beck, a vocal critic of a no-bid city contract, had been targeted by police in what he alleged to be a retaliatory investigation; after confronting the police chief, he was arrested for violating a statute that criminalized threats of violence against police officers. 527 F.3d at 857-60. Although a deputy district attorney had reviewed the police report and generated a criminal complaint – and a superior court judge issued an arrest warrant – the charges were soon thrown out because Beck never threatened violence, as the statute required. *Id.* at 859-60. Beck filed suit against the police chief and officers under section 1983, raising a Fourth Amendment claim for false arrest, unlawful detention, and false imprisonment, and a First Amendment claim for retaliatory arrest. *Id.* at 860.

At issue was whether or not the prosecutor's actions constituted an intervening cause that shielded the officers from liability. The Ninth Circuit concluded that they did not, under the standards of both *Hartman* and *Smiddy*. To satisfy *Hartman*, the Court found an absence of probable cause because Beck "could not have been understood in context to threaten violence," and identified extensive evidence showing a retaliatory motive. *Beck*, 527 F.3d at 866-69. Turning to *Smiddy*'s burden-shifting framework, the Court found that the officers were not entitled to rely on the presumption of independent prosecutorial judgment because the prosecutor shielded relevant evidence by invoking privilege. *Id.* at 869-70. "[N]o presumption will arise" under *Smiddy* where the evidence necessary to challenge the presumption is unavailable, "for reasons of privilege or otherwise." *Smiddy*, 665 F.2d at 267-68. The Ninth Circuit refused to force Beck "to come forward with evidence to rebut the presumption of . . . independent judgment" when the prosecutor refused to answer questions regarding the officers' influence on his charging decision. *Beck*, 527 F.3d at 870. Whether

or not the prosecutor's judgment was "sufficiently independent as to amount to an intervening cause shielding [the officers] from liability" was therefore a question for the jury, with "the burden of showing that [the prosecutor] acted independently fall[ing] on the officers." *Id.*

To avoid having to determine whether *Smiddy*'s burden-shifting framework had to be overturned in light of *Hartman*, the Ninth Circuit assessed intervening cause under both *Hartman* and *Smiddy* and concluded that the plaintiff survived summary judgment under either standard. *Beck*, 527 F.3d at 865. This Court follows the same approach. *Hartman* (as interpreted by *Beck*) requires that Cuadra establish the absence of probable cause, which he has done; Cuadra therefore survives summary judgment under that standard. To satisfy *Smiddy*, Cuadra bears the burden of rebutting the presumption of prosecutorial independence. *Smiddy* offered a nonexclusive list of evidence that would do so, such as "a showing that the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment," or "the presentation by the officers to the district attorney of information known by them to be false." *Smiddy*, 665 F.2d at 266. However, the parties did not develop a sufficient record on summary judgment to assess whether the presumption of independent judgment is rebutted.[6] *Smiddy* does not apply the presumption where the evidence necessary to challenge it is unavailable; here, as in *Beck*, the lack of evidence requires that the question be decided by the jury.

The question of whether the prosecutor broke the chain of causation linking Kallas and Brosnan to the constitutional deprivation is properly left for a jury. By showing the absence of probable cause, as is "necessary" under *Beck*, Cuadra survives summary judgment as to Kallas and Brosnan. He also survives under *Smiddy*, as the officers cannot enjoy the presumption of prosecutorial independence where the evidence necessary to rebut that

---

[6] Although Defendants argued in their motion that the Individual Defendants should be dismissed because they played no role in the investigation of Cuadra's claims, they did not assert that the prosecutor's exercise of independent judgment broke the chain of causation. Defendants therefore did not put Cuadra on notice to present evidence rebutting the presumption of prosecutorial independence.

13

presumption is not available. At trial, the officers will bear the burden of showing that the chain of causation was broken. *Beck*, 527 F.3d at 870.

### 2. Qualified Immunity

Defendants also argue that the suit should be dismissed because the officers are protected by qualified immunity. As the Court has already concluded that the other Individual Defendants should be dismissed on the basis of causation, the Court will only consider this argument with respect to Kallas and Brosnan.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). A police officer enjoys qualified immunity "unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 816 (2009). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (section 1983 claim against officers who requested arrest warrant).

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), set forth a "two-step sequence for resolving government officials' qualified immunity claims." *Pearson*, 129 S. Ct. at 815. A court must first decide whether "the facts alleged show the officer's conduct violated a constitutional right," and if so, then asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-02. A defendant does not receive qualified immunity if both questions are answered in the affirmative. The Supreme Court later ruled in *Pearson* that the sequence of two steps, while "often beneficial," "should no longer be regarded as mandatory." 129 S. Ct. at 818. In so ruling, the Court acknowledged criticism of the two-step sequence as forcing courts "unnecessarily to decide difficult constitutional questions when there is available an easier basis for the decision (e.g.,

14

qualified immunity) that will satisfactorily resolve the case before the court." *Id.* at 817-18 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201-02 (Breyer, J., joined by Scalia and Ginsburg, JJ., concurring)). Judges should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

Here, the qualified immunity inquiry is simple. First, there was no probable cause to arrest Cuadra for breaking a law that had already been held unconstitutional, which means a constitutional right was violated. Second, the probable cause requirement was clearly established at the time of Cuadra's arrest. Under this rubric, Kallas and Brosnan do not have qualified immunity.

The Individual Defendants argue that they should enjoy qualified immunity because the officers relied on the advice of the D.A.'s Office. However, qualified immunity is assessed using "what is essentially an artificial test, one that specifically looks to objective, not subjective, reasonableness." *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1483 (9th Cir. 1993). Under that test, "an official is charged with knowledge of controlling Supreme Court and Ninth Circuit precedent." *Id.* The officers' reliance on the prosecutor's opinion may only be "evidence of good faith," but "does not render the officer's conduct per se reasonable." *Friedman v. Boucher*, 580 F.3d 847, 859 (9th Cir. 2009). "[I]f the facts show that the right the officer violated 'was clearly established and would be known to a reasonable officer in the circumstances,' then the officer is not entitled to qualified immunity, regardless of the prosecutor's advice." *Id.* Although Defendants draw much attention to conflicting case law regarding the status of section 148.6, the parties do not dispute that the Ninth Circuit held the statute unconstitutional in *Chaker v. Crogan*, 428 F.3d 1215 (9th Cir. 2005). That decision was filed on November 3, 2005, 11 months before Kallas and Brosnan prepared and approved the misdemeanor report recommending prosecution under section

148.6. Since the hypothetical "reasonable" officer would have been aware that section 148.6 had been held unconstitutional, Kallas and Brosnan are not entitled to qualified immunity.[7]

## II. *Monell* Claim Against the City

Defendants also argue that the claim against the City must fail because Cuadra has no evidence suggesting that a city policy was the moving force behind the constitutional violation. Cuadra responds that this issue cannot be summarily adjudicated.

Municipal liability in section 1983 actions is "only appropriate where a plaintiff has shown that a constitutional deprivation was directly caused by a municipal policy." *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001). Four conditions must be satisfied to hold the municipality liable for failing to act to preserve constitutional rights: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Nadell*, 268 F.3d at 929. Where, as here, the alleged basis for municipal liability is "the inadequacy of police training," the failure to train must amount to "deliberate indifference to the rights of persons with whom the police come into contact" in order to "be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). The failure to train must reflect a "'deliberate' or 'conscious' choice by a municipality." *Id.* at 389.

Cuadra has presented no evidence of training so inadequate it amounts to deliberate indifference to his constitutional rights. As Cuadra has the burden at trial, Defendants need only point to the absence of any evidence supporting Cuadra's claim to win on summary

---
[7] The role of the D.A.'s Office may still be a basis for finding that Kallas and Brosnan are not liable. However, as discussed *supra*, the basis for that argument is causation, not qualified immunity.

16

judgment. Defendants have done so, arguing that Cuadra presents, at best, one instance of failure to train, which is insufficient to establish deliberate indifference. Cuadra claims that *Monell* liability cannot be summarily adjudicated, but requests in the alternative that the Court not rule until further discovery is conducted. However, Cuadra again fails to file an affidavit or even explain why such discovery was not already done, as Rule 56(f) requires. Cuadra therefore presents the Court no basis for granting Rule 56(f) relief, and the Court declines to do so. Cuadra's request for further discovery is denied without prejudice.

Summary judgment is therefore GRANTED to the City on Cuadra's fifth cause of action for municipal liability.

**CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED in part, as to Plaintiff's claims against Defendants Gil, McNichol, Molyneux, Plank, Varney, and the City, and DENIED in part as to Defendants Kallas and Brosnan. Plaintiff's motion is DENIED. The only claims remaining are the second, third, and fourth causes of action against Kallas and Brosnan.

Cuadra's counsel also requested permission to "amend the FAC and insert Azzopardi as a Doe Defendant as it appears that he is the primary person responsible for investigating and filing the complaint." Pl.'s Opp'n to Defs.' Mot. at 9. The Court does not now address the propriety of amending the complaint or otherwise adding defendants. Cuadra may do so only by filing the appropriate motion.

**IT IS SO ORDERED.**

Dated: 1/4/10

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE